IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHRIS S. NIX, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO.:  2:05-CV-1044-D |
| | ) |
| ANTHONY CLARK, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S SPECIAL REPORT

COMES NOW the Defendant Covington County Sheriff Anthony Clark and submits his Special Report to the Court as follows:

### INTRODUCTION

The Plaintiff in this action, Chris S. Nix, filed his Complaint on October 31, 2005. The Complaint alleges various violations of his First, Fourth, Eighth, and Fourteenth Amendment rights. On November 3, 2005, this Court ordered the Defendant to submit a Special Report concerning the factual allegations made by the Plaintiff in his Complaint.

### PLAINTIFF'S ALLEGATIONS

It is extremely difficult to determine, from the Plaintiff's Complaint, exactly what his allegations and claims are. However, as best defense counsel is able to determine, the Plaintiff alleges the following: (a) Defendant's failure to address the Plaintiff's grievances in violation of the Plaintiff's First Amendment right to petition the government for redress of his grievances; (b) Defendant's failure to provide adequate medical attention in violation of the Plaintiff's Fourth

Amendment right to be secure in his person;[1] (c) denial of medical treatment in violation of the Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment; and (d) unlawful detention without water and sewage in violation of the Plaintiff's Eighth and Fourteenth Amendment rights.

## DEFENDANT'S RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendant Sheriff Anthony Clark denies the allegations made against him by the Plaintiff as said allegations are untrue and completely without basis in law or fact.

### I.   FACTS

The Plaintiff was incarcerated in the Covington County Jail on July 4, 2005 for Attempted Manslaughter II, Possession of Marijuana, Possession of Drug Paraphernalia, Reckless Endangerment, Resisting Arrest, and Driving Under the Influence.  (See Inmate File of Christopher Scott Nix, (hereafter, "Inmate File"), attached hereto as Exhibit A and incorporated herein as if fully set forth.)  At the time he was booked into the jail, the booking officer, Bill Blue, noted that the Plaintiff was subject to mental emotional upset, attempted suicide, drug addiction and mental illness.  Id.  However, he had no medication on his person at that time.  Id.

At the time of the Plaintiff's incarceration, the Covington County Jail had an inmate grievance procedure.  (Affidavit of Anthony Clark dated December 12, 2005 (hereafter, "Clark Aff."), attached herewith as Exhibit B and incorporated herein as if fully set forth, at ¶ 4.)  Grievances were required to be in writing and could be filed with any member of the jail staff.  Id.  Copies of grievance forms are kept in the inmate's jail file.  Id.  Jail policy provided an exception that allowed emergency grievances to be made orally.  Id.  It was a violation of jail

---

[1] The Plaintiff alleges that he has "been denied the right to be secured in [his] houses[,] paper and effects by failure to give proper medical screening nor medical treatment."  However, the Defendant assumes, given the allegations, that the Plaintiff means to implicate his personal well-being and security.

policy to deny an inmate access to the grievance procedure. (Clark Aff. at ¶ 6.) The Plaintiff was aware of the grievance procedure. (Clark Aff. at ¶ 5.)

The Covington County Commission has contracted with Southern Health Partners, Inc. (hereafter, "SHP") to provide all health care related services for the inmates of the Covington County Jail. (Clark Aff. at ¶ 10.) Accordingly, the jail staff, including Sheriff Clark, Jerry Edgar and Dorene Nelson, have no authority or control over the provision of such services, and rely on the training and expertise of SHP for such services. (Clark Aff. at ¶ 11.) Moreover, SHP staff maintain, control, secure and dispense all medications. (Clark Aff. at ¶ 10.) Covington County Jail personnel do not have access to patient medications. Id. However, jail staff are instructed to contact the SHP nurse if an inmate is in obvious distress. (Clark Aff. at ¶ 11.) The jailers are required to follow any instructions given by the nurse. Id. If a jailer believes he is confronting an obvious emergency, he has full authority to summon an ambulance to take an inmate to Andalusia Regional Hospital. Id.

Contrary to the Plaintiff's allegations, the Covington County Jail provides all constitutionally mandated necessities to its inmates, and includes several non-mandatory amenities. The Covington County Sheriff's Department has a policy of providing adequate housing, food, and toilet facilities for its residents. (Clark Aff. at ¶¶ 9.) Each inmate has continual access to water and toilet facilities. Id. It would be a violation of Sheriff's Department policy to restrict an inmates' access to water or toilet facilities.

Defendant Sheriff Anthony Clark has no personal involvement in the day-to-day operations of the Covington County Jail. (Clark Aff. at ¶ 7.) Sheriff Clark has delegated these responsibilities to the jail administrator. Id. Sheriff Clark has no personal knowledge of the facts of the Plaintiff's Complaint. (Clark Aff. at ¶ 3.)

3

II.    **LAW**

    A.    **The Plaintiff's Claims are Barred by the Prison Litigation Reform Act for his Failure to Exhaust Administrative Remedies.**

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies before an inmate may file a lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); Booth v. Churner, 532 U.S. 731, 733-34 (2001) (stating that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' ***before*** suing over prison conditions."). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Plaintiff in this case has not utilized all administrative remedies available to him; he failed to file a claim with the State Board of Adjustments.

The Plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq. Because the State provides an administrative remedy that the Plaintiff failed to exhaust, the Plaintiff's claims are barred by 42 U.S.C. § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

    B.    **Sheriff Clark, in his Official Capacity, is Entitled to Judgment in his Favor as a Matter of Law.**

In his Complaint, the Plaintiff has not designated whether he is suing Sheriff Clark in his official or individual capacity. Out of an abundance of caution, to the extent the Plaintiff's

4

Complaint can be construed as making official capacity claims, the Eleventh Amendment bars such claims. Additionally, Sheriff Clark, in his official capacity, is not a "person" for purposes of 42 U.S.C. § 1983.

### 1. All official capacity claims against Sheriff Clark are barred by the Eleventh Amendment to the United States Constitution.

The Plaintiff's official capacity claims against Sheriff Clark are due to be dismissed for lack of subject matter jurisdiction. Sheriff Clark, in his capacity as sheriff, is an executive officer of the State of Alabama. Therefore, a suit against him, in his official capacity, is a suit against the State of Alabama. See Hafer, 502 U.S. at 25; Lancaster, 116 F.3d at 1429; see also Kentucky v. Graham, 473 U.S. at 165-66. Because this suit is, in effect, a suit against the State of Alabama, the Eleventh Amendment to the United States Constitution bars the Plaintiff's claims under § 1983. See Free, 887 F.2d at 1557; see also Dean v. Barber, 951 F.2d 1210, 1215 n.5 (11th Cir. 1992); Carr v. City of Florence, 916 F.2d 1521, 1525 (11th Cir. 1990) (citing Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) and upholding the proposition that a deputy sued in his official capacity is entitled to Eleventh Amendment immunity). Thus, this Court lacks subject matter jurisdiction over these claims.

### 2. Sheriff Clark, in his official capacity, is not a "person" for purposes of 42 U.S.C. § 1983.

42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution. 42 U.S.C. § 1983. The United States Supreme Court has held that a state official sued in his or her official capacity, is not a "person" under § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). Thus, any claims against Sheriff Clark, in his official capacity, are due to be dismissed because he is not a "person" under § 1983, and therefore, these claims fail to state a claim upon which relief can be

granted.  Id.; Carr, 916 F.2d at 1525 n.3 (citing Will and noting that, in addition to entitlement to Eleventh Amendment immunity, "neither a State nor its officials acting in their official capacities are a 'person' under § 1983").

      **C.**     **Sheriff Clark is Entitled to Qualified Immunity.**

In his individual capacity, Sheriff Clark is entitled to qualified immunity and a dismissal of Plaintiff's claims unless he violated the Plaintiff's clearly established constitutional rights of which a reasonable person would have known.  Lancaster, 116 F.3d at 1424.  Qualified immunity is a protection designed to allow government officials to avoid the expense and disruption of trial.  Ansley v. Heinrich, 925 F.2d 1339, 1345 (11th Cir. 1991).  The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*."  Lassiter v. Alabama A & M Univ., 28 F.3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).  In the light of pre-existing law the unlawfulness must be apparent.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Mere statements of broad legal truisms, without more, are not sufficient to overcome qualified immunity.  Post v. City of Ft. Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated

the plaintiff's constitutional rights?  Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.  See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994).  A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson, 483 U.S. at 640; Lancaster, 116 F.3d at 1424.  "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  Jenkins v. Talladega Bd. of Educ., 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

The instant Plaintiff alleges that he was unlawfully denied medical care, that Sheriff Clark unlawfully detained him in cruel and inhumane environment, and that Sheriff Clark refused to respond to his grievances.  Sheriff Clark is entitled to judgment in his favor as a matter of law on these claims for three reasons.  First, Sheriff Clark's policies and actions were not deliberately indifferent to a constitutional right of the Plaintiff.  Second, Sheriff Clark did not promulgate policies that caused the Plaintiff's alleged constitutional deprivations.  Third, no clearly established law provided Sheriff Clark with "fair warning" that his conduct was unlawful.

### 1.     The Plaintiff did not suffer from an objectively serious medical need.

A constitutional violation under the Eighth Amendment for denial of medical care is stated where the facts tend to show that a jail official was deliberately indifferent to the serious medical needs of an inmate.  See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  The Plaintiff must satisfy both an objective and a subjective inquiry.  Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir.

7

2000); Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995). First, he must show an objectively serious medical need. Taylor, 221 F.3d at 1258; Adams, 61 F.3d at 1543. Second, the Plaintiff must demonstrate that the Defendant acted, or failed to act, with an attitude of "deliberate indifference" to that serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). A prison official cannot be deliberately indifferent to an excessive risk to an inmate's health unless he is both "aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . draws[s] the inference." Farmer, 511 U.S. at 837.

In the instant case, the Plaintiff has failed to allege any facts tending to show that Sheriff Clark knew of a serious medical condition. In fact, other than alleging that he is "bi-polar schizophrenic," "disabled," "under a lot of stress" and "mentally ill," he has failed to allege that he even has a serious medical condition. While the Plaintiff's mental condition *could* become a serious medical need, it was not at the time of his incarceration. Additionally, there is nothing in the Plaintiff's jail file that indicates that the Plaintiff's medical condition adversely affected either his own safety or well-being, or the safety and well-being of the other inmates. (Inmate File.)

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567,

1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").  The Plaintiff has not alleged any facts to show that he has been a danger either to himself or to others.  Consequently, he cannot show an objectively serious medical need for purposes of this lawsuit.

> **2.    The Complaint fails to allege a constitutional violation in that Sheriff Clark was not deliberately indifferent to the Plaintiff's serious medical needs.**

The Constitution does not mandate comfortable prisons.  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  Jail officials must provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter, and medical care.  Hudson v. Palmer, 468 U.S. 517, 526-527 (1984).  A claim is stated only where the conditions of confinement pose a risk to the health or safety of an inmate and the defendant official is deliberately indifferent to that risk.  Farmer, 511 U.S. at 837.

Sheriff Clark was not deliberately indifferent to any objectively serious need that could be construed in the Plaintiff's Complaint.  In order to be deliberately indifferent, an official must both know of a serious risk of harm and disregard it.  Farmer, 511 U.S. at 837.  The Complaint does not allege, and the facts do not support, that Sheriff Clark was deliberately indifferent.

Anthony Clark has no direct involvement whatsoever in the provision of medical care to the Plaintiff or other inmates at the Covington County Jail.  (Clark Aff. at ¶¶ 7, 10-12.)  In fact, the Plaintiff's Complaint does not allege that Sheriff Clark had anything whatsoever to do with

9

his medical care. (See, generally, Complaint.) SHP was responsible for the provision of medical care, including mental health care, to the inmates. (Clark Aff. at ¶¶ 10-12.) The Covington County Jail staff has no control or authority over the medical practices, policies or procedures of SHP. (Clark Aff. at ¶ 10.)

Sheriff Clark does not have any kind of medical education, training or experience. He relies upon the professional judgment of medical professionals who have been retained to provide care to the inmates. This Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[2] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment

---

[2] The medical director was a trained and licensed nurse. 302 F.3d at 846.

director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

Assuming, *arguendo*, that the SHP staff or the county mental health facility employees did not properly respond to the Plaintiff's complaints, Sheriff Clark has not been deliberately indifferent. Sheriff Clark is **required** to rely upon their medical staff. He cannot supplant his untrained opinion for that of medical professionals.

Finally, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. There is no allegation whatsoever in the Complaint that Sheriff Clark participated in, or interfered with, the treatment decisions made with regard to the Plaintiff. It is therefore clear from the face of the Complaint that the Plaintiff's chief claim is that the contract medical personnel ineffectively treated him. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Id. Regardless, Sheriff Clark cannot be held responsible for the alleged malpractice of a county contractor.

The Plaintiff has failed to allege, and the facts do not support, that Sheriff Clark violated the Plaintiff's federally protected rights. As stated before, Sheriff Clark is not specifically

accused of doing anything wrong, other than failing to respond personally to the Plaintiff's grievances; therefore it is unclear why he has been sued. Accordingly, the Plaintiff cannot meet either of his burdens under the qualified immunity analysis – he cannot show a constitutional violation or clearly established law that placed Sheriff Clark on notice that his conduct was unlawful.

### 3. Sheriff Clark did not violate any of the Plaintiff's federally protected rights.

The Plaintiff cannot meet his first burden under the qualified immunity standard – he cannot show a violation of his federal rights. Sheriff Clark is therefore entitled to qualified immunity for three reasons. First, Sheriff Clark can not be held liable on a theory of *respondeat superior*. Second, there are no allegations of any wrongdoing on the part of the Sheriff. Third, there is no causal connection between the policies promulgated by Sheriff Clark and the Plaintiff's alleged injuries.

#### (a) *Respondeat Superior* cannot serve as a basis for § 1983 liability.

To the extent the Plaintiff seeks to impose vicarious liability on Sheriff Clark, his claims are due to be dismissed. As noted previously, vicarious liability is not permitted under § 1983. See Monell, 436 U.S. at 691.

#### (b) There is no allegation of any personal wrongdoing on the part of Sheriff Clark.

There is no constitutional mandate that prisons or jails be made comfortable. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." Price v. Johnston, 334 U.S. 266, 285 (1948). "Maintaining institutional security and preserving internal order and discipline are essential goals that may require

limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." Bell v. Wolfish, 441 U.S. 520, 546 (1979).

To overcome Sheriff Clark's entitlement to qualified immunity, the Plaintiff must prove that he was deliberately indifferent. Farmer v. Brennan, 511 U.S. 825, 836 (1994). Specifically, the Plaintiff must prove that Sheriff Clark was aware that a substantial risk of serious harm to the inmate's health or safety existed. The Plaintiff must further prove that Sheriff Clark drew the inference of the existence of such a risk. Id. As previously noted, Sheriff Clark has nothing to do with the day-to-day operations of the Covington County Jail. The Plaintiff's only allegation directly against Sheriff Clark is that the Sheriff did not respond to his grievance. However, Sheriff Clark, pursuant to policy, passed the Plaintiff's grievance along to the appropriate individuals to address the situation. (Clark Aff. at ¶ 8.)

Based upon the foregoing the Plaintiff has failed to allege a violation of his federally protected rights – let alone a violation personally committed by Sheriff Clark. Therefore, Sheriff Clark is entitled to qualified immunity and judgment as a matter of law on the Plaintiff's claims. With regard to the Plaintiff's claims of detention without water or sewage, Sheriff Clark has no involvement with the day to day operations of the jail. Notwithstanding that, however, it is jail policy to provide inmates with water and bathroom facilities at all times, and it would be a violation of Sheriff Clark's jail policies to fail to do so. Id. at ¶ 9.

> **(c)** **There is no causal connection between any policy or custom promulgated by Defendant Sheriff Anthony Clark and the Plaintiff's alleged injuries.**

The Eleventh Circuit has stated what is required to make out a § 1983 claim against a supervisor:

> Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions

13

>of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The Eleventh Circuit, therefore, applies a three-prong test that the Plaintiff must satisfy to establish supervisory liability: (1) the supervisor's actions, either in training, promulgating policy, or otherwise, were deliberately indifferent to the Plaintiff's rights; (2) a reasonable person in the supervisor's position would know that his or her actions were deliberately indifferent; and (3) the supervisor's conduct was causally related to the subordinate's constitutional infringement. Greason v. Kemp, 891 F.2d 829, 836-37 (11th Cir. 1990); see also Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) (citations omitted). The causal connection may be established where the supervisor's improper "custom or policy ... result[s] in deliberate indifference to constitutional rights." Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991) (citing Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986)). "[T]he inadequacy of police training may serve as the basis for § 1983 liability *only* where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton v. Harris, 489 U.S. 378, 388 (1989) (emphasis added). The Complaint fails to allege facts supporting any of these elements, and there is no evidence to support the allegations even if they were made.

Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates "on the basis of *respondeat superior* or vicarious liability." Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994) (citation and quotation omitted).

First, Sheriff Clark's policies and actions were not deliberately indifferent. As noted above, there is no allegation or evidence of personal involvement on his part with respect to the

operations of the Covington County Jail, and certainly not with respect to the provision of medical treatment to the Plaintiff. Furthermore, there is no allegation that Sheriff Clark had knowledge (either actual or constructive) of a training deficiency in the Covington County Jail or that the policies and/or customs of the jail would result in constitutional violations. Id. There is no allegation of widespread obvious, flagrant, rampant and continuous abuse by corrections officers. Id.

Second, there are no facts in the record from which a reasonable person could conclude that the Sheriff Clark's conduct was deliberately indifferent. For example, there are no specific allegations that his detention has harmed the Plaintiff, or any other inmate.

Prison officials may be held liable for denying humane conditions of confinement only if they know that inmates face substantial risk of serious harm and disregard that risk by failing to take reasonable measures to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). There are no allegations in the Complaint at all to show that Sheriff Clark was aware of any risk of harm to the Plaintiff – let alone a substantial risk of harm. Consequently, the Plaintiff has failed to meet the second element of supervisory liability under § 1983.

Regarding the third element of supervisory liability, there is no causal connection between Sheriff Clark's conduct and the alleged constitutional deprivation. Again, Sheriff Clark was not present during any of the events described in the Plaintiff's Complaint. There is no evidence that Sheriff Clark failed to train the jail personnel.

The Plaintiff has failed to allege, and the facts do not show, the existence of the elements of supervisory liability under § 1983. See Greason, 891 F.2d at 836-37. Sheriff Clark cannot be held vicariously liable under § 1983. Monell, 436 U.S. at 694-95. Consequently, Sheriff

Anthony Clark is entitled to qualified immunity and judgment in his favor as a matter of law. Saucier, 533 U.S. at 201.

>   **D.  No Clearly Established Law Gave Sheriff Clark Fair Warning that his Conduct was Unlawful.**

The Plaintiff must show that clearly established law provided Sheriff Clark with fair warning that his conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that a Defendant's conduct was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

As the Plaintiff has made no direct allegations with respect to the conduct of Sheriff Clark, other than an alleged failure to address his grievances, there is nothing from which the Court may judge whether Sheriff Clark has acted lawfully or unlawfully.  Consequently, the Plaintiff has failed to meet the second burden placed upon him by the qualified immunity standard.  It should be noted, however, that with respect to the policies Sheriff Clark has put in place at the Covington County Jail, each one is constitutional.

### III.  MOTION FOR SUMMARY JUDGMENT

#### A.  Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  Greason, 891 F.2d at 831.  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  Reeves, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[3]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  Marsh v. Butler County, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc) quoting Massachusetts School of Law v. American Bar, 142 F.3d 26, 40 (1st Cir. 1998).

#### B.  Motion for Summary Judgment

Sheriff Clark respectfully requests that this honorable Court treat this Special Report as a motion for summary judgment and grant unto him the same.

---

[3] Although Reeves was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  Reeves, 530 U.S. at 150, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-251 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Respectfully submitted this 13th day of December, 2005.

        **s/Scott W. Gosnell**
        SCOTT W. GOSNELL, Bar Number: GOS002
        Attorney for Defendants
        WEBB & ELEY, P.C.
        7475 Halcyon Pointe Road (36117)
        P.O. Box 240909
        Montgomery, Alabama 36124
        Telephone: (334) 262-1850
        Fax: (334) 262-1889
        E-mail: sgosnell@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 13th day of December, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and served the following Non-CM/ECF participant by United States Mail, postage prepaid:

Chris S. Nix
Covington County Jail
290 Hillcrest Drive
Andalusia, Alabama 36420

        **s/Scott W. Gosnell**
        OF COUNSEL